Baldwin, J.
This, it seems to me, as regards the justices, is an action of trespass on the case, brought in a court of equity, to recover damages for a misfeasance in office. It is founded upon no contract of theirs, express or implied, nor upon any benefit or consideration which has enured to them; but seeks to subject them to a loss occasioned, as is alleged, by their official misconduct. The demand of the plaintiffs against the justices was for a retribution altogether uncertain, depending as it did, in the first place, upon the uncertain extent of the malversations, delinquencies and devastavits of their guardian; and, in the next place, upon the uncertain amount of property or money which ho might be unable to surrender or pay.
It is impossible, I think, to treat the justices as debtors of the wards, or sureties for the guardian. A debt can arise only from a contract, express or implied; a surety-ship from nothing but an express contract. It is a mere figure of speech to call a contingent liability, dependent upon the inability of another, and created by statute, without contract or consideration, a supplemental suretyship. This is more emphatically so when the liabi *322 lity, as in the present instance, springs, not from the misconduct alone of the party chargeable, but also from the motives which governed his wrongful act or omission. The justices or judges, under this statute, are clearly not liable f°r errors of judgment, but only for wilful misconduct or culpable negligence. If they take a bond, however defective in form, which in their honest judgment is sufficient, they are irresponsible; and so if they take security of whose sufficiency they are satisfied by his or other evidence, however erroneous their opinion. But if they refuse or fail to take bond, or take insufficient security, without knowledge or evidence of his circumstances, they incur the liability prescribed by the statute. This, I think, is quite clear, from the language of the statute, and is rendered still more so by looking to the common law at the time of its passage.
By the common law, judges or justices of the peace, acting judicially, while keeping within the limits of their jurisdiction, are not responsible to civil actions, however gross their misbehaviour or improper their motives. But ministerial officers are liable for injuries proceeding from their unlawful acts or omissions, though attributable only to ignorance or mistake. Ministerial officers, however, and other public officers, though not employed in the administration of justice, when called upon by law to exercise a deliberative judgment, are not responsible for errors of judgment, in the absence of all corruption or malice. It cannot be doubted that judges and justices of the peace, acting as the judges of a court of record, in the appointment or qualification of a guardian, must be considered as proceeding judicially; and that, according to the principles of the common law, they were in no wise answerable to the civil action of a party injured by any dereliction of duty in regard to the subject.
This complete immunity was considered by the legislature an evil, which called for an amendment of the *323 law; and it was provided by a statutory enactment, » which places the judges or .justices upon the footing of ministerial officers discharging a ministerial duty, so far, and so far only, as to make them responsible for wilful disobedience or culpable negligence in this particular: leaving them still the protection allowed to ministerial and other officers, not acting judicially, but called upon to exercise a deliberative judgment; to the extent of exempting them from liability for mere errors of judgment. And the remedy contemplated and provided by the statute is, the appropriate and only remedy given by the common law against ministerial officers for consequential damages occasioned by their misfeasance, the action of trespass on the case.
How a court of equity can obtain cognizance, against the justices, of such a case as this, is wholly beyond my conception. Let us suppose that they were the only defendants to the bill. Under what head of equitable jurisdiction, would the relief sought by the plaintiffs against the justices bo found ? As to them there is no pretence of fraud, or trust, or mutual dealing, or accident, or mistake ; and no account, nor discovery, nor specific performance sought against them: and so we might go through the whole chapter of equity powers, exclusive, concurrent and assistant, in the vain search for any appropriate head of jurisdiction, until we come to that residuary clause, by which a court of conscience is warranted to grant relief, where none can be had at law. But the legislature certainly thought, they were providing a plain and adequate remedy at law, by the action of trespass on the case for the recovery of damages against the defaulting justices. And there being no peculiar circumstances in this case, if there be no adequate remedy at law, and relief in equity is to be sought on that ground, then it follows that every action of the sort must be brought in a court of chancery.
*324 No difficulty, however, in the remedy at law has been or can ije suggested. It is a matter of discretion for the party aggrieved to prosecute at once his action at law against the justices, relying upon the evidence he may have to prove what estate came to the hands of the x guardian, and his total or partial insolvency; a remedy quite as easy as the action against an executor for a devastavit. Or the ward may defer the inception or trial of his action against the justices, until by proceedings in chancery against the guardian, he shall have ascertained the amount for which the guardian is “ answerable,” and how much thereof he is unable to pay; of which the decree so obtained, and the process of execution thereupon, would be sufficient evidence. And thus the two jurisdictions will be kept separate and distinct, without hardship or inconvenience to any one. But if judges or justices are to be harassed by a tedious and expensive chancery litigation, at the caprice of suitors who may think to multiply the chances of success, by uniting the remedy ex delicto against one party with the remedy ex contractu against another, then, indeed, it will be time for such judicial officers to consider, whether the post, if not of honour, at least of safety, be not the private station.
If equity has no jurisdiction against the justices alone, how can it be acquired by making them defendants to the suit brought against the guardian ? Surely such an invasion of the common law jurisdiction, and the province of a jury, cannot be justified by any other plea than that of necessity. It ought to be shewn, that it is necessary for the exercise of the unquestionable jurisdiction of the court in relation to the guardian. But where is the necessity ? The proceedings against the guardian, the nature and extent of his accountability, and the relief sought against him, are precisely the same, whether the justices have incurred any liability or not. *325 It is necessity which lies at the foundation of the rule of equity, requiring all persons materially interested in the subject, or who will be directly affected by the decree, to be made parties in the cause. The jurisdiction of the court could not, otherwise, be fully or safely exercised. And when it has once obtained possession of the subject and the parties, it will, when it conveniently can, without transcending its own principles, render complete justice, and prevent further litigation, by settling the whole controversy. But here, the justices have obviously no interest in the subject. The most that can be said, is that they have an interest in the question, inasmuch as they may be collaterally affected by the result. The decree against the guardian ascertains the amount for which he is answerable, and will be evidence for the wards on that point, in a future action against the justices for their alleged misfeasance in office. But it will conclude nothing else, if conclusive on that point, as to which I express no opinion. It will by no means conclude the cause, which must still turn upon the guilt or innocence of the justices.
It will be seen from what has been said, that if, in this case, the court has jurisdiction against the justices, it must be not merely because of their common law liability, occasioned by their misfeasance in office, but because, moreover, of their interest in the question of the guardian’s liability ; and it has been argued here, that it was for their benefit to be made defendants, in order to enable them to controvert the liability of the guardian. It follows, if they are proper parties by reason of their interest, that they are also necessary parties for the same reason; that it was not only the right, but the duty of the plaintiffs to make them defendants; and that the failure to do so would have subjected the bill to a plea or demurrer. Now, this consequence must startle every one, and it serves to shew that the pretence of jurisdiction against the justices is hardly colourable. *326 It is true the sureties of the guardian are proper parties, ^ though not necessary parties, and the difference between their case and that of the justices, is this; that the undoubted jurisdiction of the court in regard to the sureties is founded, not upon their interest in the controversy, but upon their contract, by which they have subjected themselves jointly with the guardian, to all his responsibilities, and, of course, .to all the remedies against him.
I think it clear that where a person has a mere interest in the question, arising out of a collateral liability, though the decree may, upon that question, be evidence for or against him, in some future controversy, such interest does not render him a necessary, or even a proper party. If this were not so, the limits of equity jurisdiction might be indefinitely extended. I can perceive no convenience whatever in the opposite doctrine, and it would carry with it the certain inconvenience of a confusion of boundaries between the common law and equity jurisdictions.
There may be cases, in which a court of equity will transcend the accustomed limits of its jurisdiction, to take cognizance of a claim for damages arising ex delicto, at least where the wrong has enured to the benefit of the wrongdoer; but only under very special circumstances, in order to prevent a failure of justice. This is not a case of that description; and, without consideration of the merits, I am of opinion that the circuit court did right in dismissing the plaintiffs’ bill, for want of jurisdiction, not only as against the justices and their representatives, but also as against the representative of the clerk. The idea that the question of jurisdiction was settled by this court on the former appeal, by its order directing the clerk to be made a party, seems to me wholly without foundation. This court, I think, did not decide, nor had it the remotest idea of deciding, the question of jurisdiction.
*327 As to the validity of the bond executed by the guardian and his sureties, it is unnecessary to enquire whether the instrument be valid or not as regards him, his responsibilities being in equity precisely the same in either aspect. In respect to the sureties, I consider it a mere nullity. The obligatory part of the instrument contains no penalty; and, without noticing the defect in a techical point of view, it is sufficient to say that to hold the sureties bound would defeat the manifest intent of the parties, which was to make them responsible to the extent of a given sum only, and for nothing more.
I, therefore, think there is no error in so much of the decree as dismisses the plaintiffs’ bill as against the surviving surety; but that it ought also to have dismissed it as against the representative of the deceased surety.
I am further of opinion, that as between the appellants and the appellee, who is the representative of the guardian, there is error to the prejudice of the latter, for reasons which will be suggested in the decree of this court.
The other judges concurred in the opinion of judge Baldwin.