SAMUEJDS, J.
The appellants’ counsel in the argument here insisted, that the slaves were improperly made parties in this case (referring to the case of McCandlish v. Edloe, 3 Gratt. 330), and that a decree of emancipation can be rendered only in a suit brought in forma pauperis for the recovery of freedom ; and that, for these reasons, the Circuit court erred in deciding the question as to the condition of the slaves. In answer it may be said that Hancock having the alleged *slaves in his possession, and being unwilling to decide the conflicting claims between them and Taylor’s next of kin, might be allowed to file a bill in equity referring the subject to the adjudication of the court, and thereby relieve himself from the responsibility of making a decision. A bill of this nature, in its functions, is a bill of interpleader; the adverse claimants become actors; each, asserting a claim, is, in effect, a plaintiff. A claim to freedom, if merely equitable, has long since been held a proper subject for the cognizance of a court of equity. A mere question of property between adverse claimants could be passed on by a court in a- case like this. A right to freedom claimed on one side, and a conflicting right of property claimed on the other, must stand on the same ground; and this especially where if either claim had been asserted in a separate suit, it would have been proper for the cognizance of the court. I am of opinion the slaves should be regarded as plaintiffs asserting their claim to freedom. The .defect of the bill is merely in form; the substance is sufficient, as it brings before the court the adverse claims of the parties.
It may be further said that this suit was pending on and before the 1st July 1850, when the Code of 1849 took effect, and the answer of the appellants was filed after that day. It is therein provided, ch. 216, \ 2, p. 800, that subsequent proceedings in pending suits shall conform as far as practicable to the provisions of that act; and in ch. 171, § 19, p. 648, 649, it is enacted that when a bill shows on its face proper matter for the jurisdiction of the court, no exception for want of such jurisdiction shall be allowed, unless it be taken by plea in abatement; and the plea shall not be received after the defendant has demurred, pleaded in bar or answered the bill’. The bill in this case shows matter proper for the jurisdiction of the court, in this, that Hancock held slaves who claimed their freedom *under an equitable title, and who are claimed as property by Taylor’s next of kin, under an equitable title. Hancock had the right to invoke the aid of a court of equity to relieve him from the responsibility of making a decision upon these conflicting claims. The appellants have been content to assert their rights in the suit brought by Hancock, making no objection to the jurisdiction of the court or to the competency of any party or parties; and they should not be permitted to make such objection for the first time in this court.
If however it be conceded that the slaves were not necessary or proper parties, then the case must be considered as if they had been omitted as such. If they had been thus omitted, the omission would not have *529 precluded the court from decreeing their emancipation in a proper case in which the persons claiming them were parties. This was done in Pleasants v. Pleasants, 2 Call 270 (Tate’s edition). The bill in that case was filed against the claimants, but omitted to make the slaves parties; their emancipation was nevertheless decreed. In Elder v. Elder’s ex’or, 4 Leigh 252, the bill was filed by a legatee against the executor, omitting the slaves as parties, yet the court decreed the freedom of the slaves.
The objection by the appellants, next in order is, that the slaves, or some of them, are not emancipated by Taylor’s will; that even if such of them as were in being at his death were emancipated from and after Mrs. Johnson’s death, yet that such of them as were born after Taylor’s death and before Mrs. Johnson’s death, being the issue of mothers in the condition of slavery, are themselves slaves.
The first branch of this objection is insisted on, because, as is alleged, the slaves were left by the will in the condition of slavery at the death of Mrs. Johnson, with the capacity to become free upon their election to become so; and until the election shall be made, “"they remain in the condition of slavery: And we are referred to the case of Elder v. Elder’s ex’or, above cited. This part of the objection is founded on a misapprehension of the will. The counsel construe the will as directing that the slaves shall remain such until they elect to become free; whereas the will, in a substantive clause, distinctly manumits them ; and afterwards, in another clause, gives them the election to remain in the state of Virginia, in a condition intermediate between slavery and freedom. The latter alternative is against the settled policy of the law, and has no effect. Forward’s adm’r v. Thamer, 9 Gratt. 537. The bequest of freedom is in no wise impaired by the impracticable and repugnant alternative offered to the choice of the slaves. In regard to the issue of the female slaves born after the death of Taylor and before the death of Mrs. Johnson, it is insisted that they are slaves; that they remain in the condition of their mothers at the time of their several births: and the case of Maria v. Surbaugh, 2 Rand. 228, is referred to in support of this branch of the objection. If we concede to the case just cited all the effect which can be claimed for it in cases in which it applies, yet the rule thereby established does not govern a case like this. In our case the testator bequeaths his slaves by the general description, “the whole of my negroes not before disposed of or devised,” in trust for Mrs. Johnson’s benefit during her life; and declares, that “at the death of Mrs. Johnson, it is my further will and direction that the slaves embraced in this item be emancipated.” Such a general description has been fre-quentlj' held to embrace not only the parent stock of slaves in being at the time of the testator’s death, but all increase thereafter born, but born before the emancipation was fully perfected. In Pleasants v. Pleasants, 2 Call 270, (Tate’s edition,) the testator said in his will, “my further desire is. respecting my poor “"slaves, all of them as I shall die possessed with shall be free,” &c. These terms were held to embrace all the slaves whenever born, and to emancipate them, as they arrived at the age fixed by the testator for the purpose. In Elder v. Elder’s ex’or, 4 Leigh 252, the terms ‘ ‘the remaining part of my negroes,” were held to include the increase of the slaves born after the death of the testator but before the time for perfecting the emancipation directed by the will. In Erskine v. Henry, 9 Leigh 188, the testator gave his slaves to a legatee for life, (as in our case,) and at her death directed “all his negroes to be free and at full libert3D ” These terms were held to include the increase of the slaves whilst they were in the hands of the life tenant. In Anderson’s ex’ors v. Anderson, 11 Leigh 616, the testator directed his slaves to be retained in the condition of slavery for a time, but at certain periods, or on certain events, provided for their emancipation, describing them as “all” his negroes. It was held that the issue born of a mother before the time for her emancipation were emancipated by the will. In Binford’s adm’r v. Robin, 1 Gratt. 327, the terms used by the testatrix, “that all my negroes be liberated,” were held to include not only slaves in possession, but also a reversionary interest in slaves depending upon a life estate; and this, although the life estate did not expire until after the death of the testatrix, and the portion falling to her estate was then for the first time set apart upon partition with other parties interested. In Lucy v. Cheminant’s adm’r, 2 Gratt. 36, the testatrix bequeathed “all the rest of her slaves” to two for their lives, and .to the survivor for life; and on the death of the survivor directed that 1 ‘said slaves be set free.” It was held that all the slaves, including those born during the life estate, were emancipated. These cases establish the rule which must govern this case; and we must hold that all the slaves in being at Mrs. ‘‘"Johnson’s death, belonging to Taylor’s estate, are emancipated by his will.
- It is said by the appellants’ counsel, that although all the slaves in being at the time of Mrs. Johnson’s death be emancipated from that time, yet they were held in slavery and hired out for some time after their right to freedom accrued; and that the appellants, the next of kin, are entitled to the hires as part of Taylor’s estate not disposed of; there being no creditor to claim them or any part of them. To sustain this position we are referred to Pleasants v. Pleasants, 2 Call 270; Paup’s adm’r v. Mingo, 4 Leigh 163; Peter v. Hargrave, 5 Gratt. 12. These cases settle the law as it formerly stood, against the right of freedmen to recover hires of a person holding them in slavery. The judges of this court, from time to time, whilst acquiescing in the de *530 cisions referred to, and admitting' the expediency and policy on which they were founded, have nevertheless admitted that it would be but natural justice to allow hires to freemen wrongfully held in slavery7. Recognizing the cases cited as furnishing the rule in any case in- which they apply, it must still be observed that the case before' us presents features not found in any other case. In each one of the cases cited the hires claimed had accrued whilst the freemen were detained in slavery by the claimant, either in his own right or in autre droit. In our case the hires did not accrue whilst the slaves were held by the administrator, representing the estate. On the contrary, those hires accrued whilst the slaves themselves were under the control of the court, where they had been placed by the administrator. That court took upon itself the duty of executing the trust theretofore confided to the administrator; and although the administrator was directed by the court to perform the duty of hiring out the slaves, still, in obeying the order of the court, he was acting merely as the officer of the court; his ^official authority or responsibilitj7 as administrator was in no wise involved in the hiring of the slaves; the court had assumed his place and authority. In the progress' of the suit it was ascertained that no cause had existed which should have prevented the administrator from setting the slaves at liberty upon the death of Mrs. Johnson. He should therefore have done so, and the freedmen would have enjoyed the fruits of their owe labor. On general principles of equity it was the duty of the court, as far as practicable, to place every one in the condition in which he was intended to stand according to the true meaning of the will. Although the time for an exact execution of Taylor’s will had passed, yet'no reason can be shown why it should not be executed as nearly as practicable. To give the freedmen their hires accrued after they should have enjoyed their freedom will be clearly within the testator’s meaning. By giving them freedom he gave the right to enjoy the fruits of their own labor. The court, by giving them -the hires under its control will, to that extent, give effect to the will. No considerations of inexpediency or impolicy intervene to prevent this disposition of the fund. The next of kin have never had possession- of the slaves, and have had no reason to rely upon the hires ás a source of revenue. They have incurred no expense in rearing and supporting them. The difficulty of settling an account of expenses on the part of the owners or claimants and of hires on the part of the slaves does not exist. In fine, none of the reasons which led to the decisions in the cases cited, exist in this case.
If necessary for the decision of this case, it might be a question how far the assent to the legacy for life of the slaves to Mrs. Johnson enured to the benefit of the slaves who were to be manumitted at her death ; whether the assent to the legacy for life should be regarded as an assent to the ulterior disposition of the *property. See Bishop’s ex’or v. Bishop, 2 Leigh 484; Lynch v. Thomas, 3 Leigh 682; Nicholas v. Burruss, 4 Leigh 289. In the opinion of a majority of the court, it is not necessary for the decision of this case to pass on the question. I content myself, therefore, with a reference to these cases on the subject.
Regarding the case as standing upon the law existing at the date of Taylor’s will, I should have no hesitation in deciding that the freedmen, under the circumstances of this case, are entitled to their own hires. The law since that time, however, has been so changed as to leave less room for doubt. The Code of 1849, ch. 106, § 8, p. 465, by giving a new capacity t.o freedmen improperly held as slaves under the circumstances of this case, has removed perhaps the only reason not yet considered, for the decisions heretofore made. In Pleasants v. Pleas-ants, before cited, at the date of the will and at the death of the testator, manumission was not permitted by law: yet the testator, anticipating a change in the law, gave directions for the emancipation of his slaves when the law should permit it to be done. When, therefore, the law subsequently permitted freedom to be given by the master and accepted by the slave, it was held that the slaves were free. In our case, the will gives freedom, which contains in itself the right to enjoy the fruits of their own labor. The capacity of the freedman is a subject within the scope of legislative authority; and when that capacity is enlarged by subsequent laws, so as to give them a right to their own hires accrued whilst improperly held in servitude, we should do no more than was done in Pleasants v. Pleasants, if we carry the law into effect-. In that case the incapacity prevented the slaves from receiving freedom at all; yet when it was removed, the grant became effectual. In our case, as is said, the incapacity was confined to the claim of profits only; this incapacity *being removed, no reason exists to withhold the hires from the freedmen against the intention of the testator Taylor. I think the Circuit court did right in decreeing the freedom of the slaves, and in giving them their own hires. ■
I am of opinion, moreover, that the court should not have decided the question of succession to the residue of Taylor’s estate, (other than slaves,) without .having before it all parties who are interested in the question. That residue is claimed on behalf of Mrs. Johnson’s estate, and it has, in part, been decreed to the estate; it is claimed by the appellants, the next of kin; and it appears in the record, that Philip T. Hancock has such interest, or color of interest, as to make him a necessary party; a part of the real estate having been decreed to him, although he is no party to the siiit. The residuary legatees named at the foot of the sixth clause of Taylor’s will, including the emancipated slaves, have also such in *531 terest or color oí interest in the residue above mentioned, as to make it proper they should be parties to any proceeding- lor the final adjudication of the conflicting claims thereto.
Thus I am of opinion to affirm so much of the decree as gives freedom to the slaves, and gives them their hires; and to reverse so much of the decree as disposes of any part of Taylor’s estate, real or personal, (other than slaves,) with costs to the appellants against Mrs. Johnson’s estate; and to remand the cause, with directions to allow the defendants or any of them to file a cross bill, if they shall be advised to do so, to bring more distinct^ before the court the subject and questions in controversy, and to cause Philip T. Hancock to be made a party.
TEJÍ), J-j concurred in the opinion of Samuels, J., except as to the hires of the negroes. He thought that this case was not to be distinguished from the cases which had been decided in this court. He did *not think that the act of 1849 applied to the case: Doubted if that act applied to wills made before its passage; but if it could do so in any case, it could not in this, in which the bill was filed before the act was passed.
DANIEJIv, J., concurred in the decree to be rendered, except as to the hires of the negroes before the act of 1849.
ATTEJN and MONCURE), Js., concurred in the opinion of Samuels, J.
The decree was as follows:
The court is of opinion there is no error in so much of the decree as gives effect to the emancipation of the slaves, as provided for in the will of Thomas O. Taylor, nor in so much of the decree as gives to the emancipated slaves the hires accrued after the death of Mrs. Johnson. It is therefore adjudged and ordered that to that extent the decree be affirmed. But the court is further of opinion that the Circuit court erred in deciding upon the rights of parties to the residue of Taylor’s estate, real and personal, (other than slaves,) without having Philip T. Hancock as a party before the court, he having such interest, real or apparent, therein as to make him a necessary party. It is therefore adjudged, &c. that so much of the decree as is declared to be erroneous be reversed and annulled, (with costs to the appellants against Mrs. Johnson’s estate,) and cause remanded, with directions to cause Philip T. Hancock to be made a party, and to give leave to the defendants, or any of them, to file a cross bill, if they shall be advised to do so, for the purpose of bringing more distinctly before the court the nature and extent of the subjects in controversy, and for further proceedings.