Allen, P.
Upon the petition of the appellee that she was unlawfully detained as a slave in the county of Alexandria, in the possession of the appellant, she was permitted to institute a suit for her freedom ; the appellant appeared and claimed to be the owner of the negro, and, by consent of parties, the court ordered the appellee to be hired out by the sheriff of said county until final judgment. At a subsequent term a jury was sworn to try whether the appellee was free or- not» A special verdict was found, which by consent was afterwards amended; and by further consent the cause was removed to the Circuit court, which rendered judgment on the special verdict as amended for the appellee.
One of the errors assigned in the petition is, that it is found by the special verdict that the appellant took possession of the appellee in Prince Georges county, Maryland, and still retains possession of her there, and the court of Alexandria county had therefore no jurisdiction to try the cause. The special verdict finds that the appellant took the appellee into his possession in said county of Prince Georges, where he administered on the estate of Basil Hatton, and has since retained her in his possession down to the time of the institution of this suit. But it is not found, as the petition states, that he retained possession of her in Prince Georges county.
The verdict does not find that she was detained as a slave in Alexandria county; and detention as a slave *293 in the county or corporation where the suit is brought, is necessary to give the court jurisdiction. The court, however, has general jurisdiction over the subject matter of the controversy, and the objection to the exercise of the jurisdiction in the particular case for the cause alleged is matter in abatement of the proceeding, and should be pleaded, or brought to the notice of the court by rule or motion before the jury was sworn to try whether the petitioner was free or not. No such motion or suggestion was made in this case. The detention of the petitioner as a slave in Alexandria county, instead of being controverted, seems to have been conceded in previous stages of the proceedings. It was so alleged in the petition. The appellant appeared at the same term, and without controverting this allegation, consented that the sheriff of Alexandria county should hire her out until final judgment. It thus appeared she was detained as a slave .within the county. In Polly v. Ratcliff, 12 Gratt. 528, Judge Daniel observes, “ that it is hardly to be supposed that the legislature, in dispensing in these suits for freedom, with the rules and declaration and pleadings, designed that questions of jurisdiction should be litigated before the jury without notice to the petitioner.” Still less can it be supposed that it was ever contemplated that such questions, though not litigated before, and therefore never passed upon by the jury, should for the first time be raised in the appellate tribunal.
Another error assigned in the petition is, that the verdict is too uncertain and defective for the court to render judgment thereon. The law of Maryland is not found or stated by the jury with sufficient certainty, and being a foreign law should have been found as a fact by the jury. After the verdict was found, certain facts were agreed between the parties, which by their consent were to be considered as incorporated *294 in and to form part of the special verdict. In this agreement of facts an act of the general assembly of Maryland is set out in full, and it is agreed that this act was in force at the date of M. Gr. Hardy’s will, under which this controversy arises; and that said act has ever been since and still is the law of Maryland.
It does not appear on the face of the verdict, nor is there a suggestion in any part of the record, that there was any other law of Maryland bearing upon the case. There is no uncertainty in this respect on the face of the verdict. In the absence of a finding of any other law in Maryland affecting the questions in controversy, the court must act on the presumption that the law of Maryland in other respects is similar to the laws of Virginia. Harper v. Hampton, 1 Har. & Johns. 623, 710; and 1 Rob. Pr. 230, and the cases there referred to.
A third objection though not assigned as error in the petition, has been taken in the argument here. The verdict, it is argued, has not found that Basil Hatton ever qualified as the executor of his sister, and as such assented to the bequest of freedom. The verdict finds the will, the probate, the birth of the appellee about a year before the death of B. Hatton the residuary legatee and executor, the death of the said B. Hatton, and that the appellant took possession of the appellee, having administered on B. Hatton’s estate, and that he.has since retained possession. The will was admitted to probate in 1830, B. Hatton died in 1840, and this suit was instituted in 1857.
The verdict shows that the appellant took and held possession of the appellee in his representative character as part of B. Hatton’s estate. If B. Hatton did not qualify as the executor of his sister, it would seem from the facts found that he held the slaves ; and therefore after such a length of time the reasonable presumption is that the administrator with the will *295 annexed did assent to the legacy. The claim of the appellant and his taking possession of the appellee as part of B. Hatton’s estate, is an affirmation on his part of an election by B. Hatton to hold as legatee for life under the will, if he qualified as executor, or that there was an assent so as to perfect his title as residuary legatee, and that so he became entitled to the increase born during his life estate. I think that there is no valid objection to the finding of the special verdict, upon either of the grounds relied on; and that the question whether the appellee under the will of Mary Gk Hardy is entitled to her freedom, which alone was intended to be presented and was decided by the court below, fairly arises upon the record.
The testatrix had her domicil in Maryland; the property was in that state; and there her will was published and admitted to probate. The will must, therefore, be considered with reference to the laws of that state. The act of the general assembly of Maryland incorporated by agreement in the special verdict, after reciting in the preamble that slaves may be liberated by the laws of that state either by last will and testament or by deed, and that when female slaves were declared to be free at a future time, the condition of the issue born before that time seemed not to be settled with sufficient legal precision, proceeds in the first section to enact that it shall be lawful for the person making such last will or deed to fix and determine in the same the state and condition of the issue that maybe born of such negro or mulatto female slave during the period of her service. The second section provides that if the state and condition of such issue shall not have been so fixed and limited, that then the state and condition of such issue shall be that of a slave. The effect of these provisions is to establish by positive enactment the principle recognized by this court in Maria, v. Surbaugh, 2 Rand. 228, confirmed by many *296 subsequent cases, and the established law of this state until it was modified by the Code, ch. 104, § 10, p.. ■ 458, which provides that such issue of any female-emancipated by deed or will thereafter made, shall be free when the mother’s right to the enjoyment of her freedom arrives, unless the deed or will otherwise provides.
It has been averred in argument, and the cases referred to prove, that in Maryland the increase of slaves conveyed or bequeathed by deed or will for life, born during the existence of the particular estate, belong absolutely to the owner of the particular estate, unless such increase shall be otherwise disposed of by the deed or will. This proposition, as between the owner of the particular estate and the remainderman, was decided in Maryland as early as 1749, in Scott v. Dobson, 1 Har. & McH. p. 160. It was reaffirmed and acted upon between similar parties in Somerville v. Johnson, 1 Har. & McH. 348. In that case the opinion of Daniel Dulany, a member of the proprietary’s council, is published, who though he disapproved of the principle, considered himself bound by Dobson v. Scott, and gives the two principal reasons which governed the court in that case :
1st. That unless the owner of the particular estate took the increase, he might have no interest worth regarding, to take care of the issue.
2nd. That in such cases a bounty was intended; but if the issue went over, instead of a benefit there might be a loss. The principle established in these cases seems still to be adhered to in Maryland. See Holmes v. Mitchell, 4 Maryl. R. 552. A different rule prevails in Virginia; the slaves born during the particular estate constitute a part of the testator’s estate, unless otherwise disposed of; Erskine v. Henry, 9 Leigh 183; and the owner of the particular estate is entitled to their services during the existence of that estate, and no *297 longer. As has been already observed on another error assigned, this law of Maryland, as gathered from judicial decisions, is not referred to in the special verdict, and there is nothing in the record indicating that it was relied on or brought to the notice of the court below. If it constituted a material part of the appellant’s case, it should have been proved as a fact on the trial; and a mere suggestion in the appellate court that other facts existed which might have been proved and found, ought not to avail the party, if the facts as proved make out a good case.
But the interpretation of the will would not be affected, whether construed with reference to this rule of the Maryland courts, or the law of Virginia only. The law of Maryland, and the principle established in Virginia in Maria v. Surbaugh, equally recognize the right of the testator to fix and determine the state and condition of such issue born during the existence of the particular estate. It resolves itself at last into a question of intention. In the construction of wills we are to find out the meaning, the intention, the will of the testator; and unless it violates some provision of law, it must be carried into effect. Anderson's ex'ors v. Anderson, 11 Leigh 616. And in Holmes v. Mitchell, 4 Maryl. R. 532, the judge observes, “ that in the interpretation of wills the intention of the testator is to be gathered from the entire instrument, and prevails, unless it violates some established principle of law; and where there is a general intent and a particular minor intent, the latter must give place.” In Virginia, as such iucrease, if not otherwise disposed of, are the slaves of the testator’s estate, any words showing an intention to emancipate all his slaves, will embrace the after-born. Thus, in Pleasants v. Pleasants, 2 Call 270, “respecting my poor slaves all of them as I shall die possessed with shall be free.” In Elder v. Elder's ex'ors, 4 Leigh 252, “ the remaining part of my ne *298 groes.” In Erskine v. Henry, 9 Leigh 188, “ all his negroes to be free and at full liberty.” In Binford’s adm'r v. Robin, 1 Gratt. 327, “that all my negroes be liberated.” In Lucy v. Cheminant's adm'r, 2 Gratt. 36, “ all the rest of my slaves.” In Osborne v. Taylor's adm'r, 12 Gratt. 117, the testator bequeathed in trust for the benefit of another for life, the whole of his negroes not before disposed of or devised; and provides that at the death of the beneficiary for life, “ it is further my will and direction that the slaves embraced in this item be emancipated.” In all these cases these general terms of description were held to embrace the after-born issue. The last is a peculiarly strong case, because it was contended that as the slaves undisposed of were given in trust for life, and the clause emancipating referred to the slaves embraced in this item, it was equivalent to a bequest emancipating slaves by name. As, however, the life tenant was entitled to the issue during the existence of the particular estate, the clause emancipating was descriptive of the class, and embraced all.
In Maryland it was decided, before the passage of the law made part of the bill of exceptions, that under a will leaving certain slaves who were named, and their increase, to his wife for life, and at her death he left all the above negroes free, and also left his lands after her death to be divided amongst them, that the increase were emancipated. Jack v. Hopewell, cited in a note to 6 Har. & John. R. 2.
And in the case of Hamilton v. Cragg, 6 Har. & John. 16, the clause was in these words: “Item. I give to my sister five negroes by name Frank, Joe, &c., to possess and enjoy during her natural life them and their increase; and my will is that after the death of my sister the above named negroes be free.” There, as in this case, there was no limitation over of the increase, and it was decided that such increase became free at *299 the death of the life tenant, because though not directed to be free and the emancipation was confined in terms to the above named negroes, it was merely descriptive of the persons who were to take their freedom. That the will made no difference in the condition of the mother and children during the life of Mrs. T., none at her death was intended, but all were equally the objects of the benevolence of the testatrix.
The will in the case under consideration, shows an intention to dispose of all her property; and the leading intent is to emancipate all her slaves. By the first and second clauses referring to her slaves, she emancipated certain slaves named, with their children, to take effect immediately at her death. By a third clause she bequeaths to her brother B. Hatton, during his life, all the rest of her slaves; and at his death, those above the age of fifteen years to be immediately emancipated, and those under the age of fifteen to be bound out in Prince Georges county until they arrive at the age of eighteen years, when they and their increase shall be free and fully emancipated.
The rest and residue of her estate, real, personal and mixed, she gives to her brother Basil Hatton; and appoints him sole executor. The will interpreted with reference to the decisions in this state, would emancipate the after-born issue; and construed with reference to the rule established in Maryland, the terms used are stronger to manifest the intention to fix the state and condition of the increase than the terms used in the cases of Jack v. Hopewell, and Hamilton v. Cragg. No difficulty arises from certain slaves named being bequeathed, and declared to be free on the death of the legatee for life. Here the bequest is of all the rest of her slaves, treating them as a class. That she intended to embrace issue as well as parents, is evident from the whole context of the will. In *300 two clauses she gives freedom immediately at her death to certain slaves who are named, and she takes care in each case to declare that the children shall also be free. In the clause in regard to the l’est of her slaves, after dividing them into those above and those under fifteen, and directing the latter to be hired out until they attain the age of eighteen; considering that some of the last class might have issue after the death cf the legatee for life, and before arriving at the age of eighteen, she takes care to provide for such increase.
In the vai’ious provisions concerning the slaves and their emancipation, the testatrix had reference not so much to the time when the will would legally take effect, the period of her death, as to the time fixed for the actual enjoyment of freedom.' When the emancipation was to be immediate, she pi’ovides for the children of the females so immediately set free. When after the termination of the particular estate, emancipation was conferred after a limited servitude, the increase if any in this interval are provided for. She could not foresee the duration of the life estate. If it continued more than fifteen years, all the negi'oes under fifteen years of age when it ended, would have been born during the existence of the particular estate. But looking to the termination of the life estate as the period when emancipation was to take effect as to the slaves included in the general bequest of the rest of her slaves, she divides the whole class into those above and those under fifteen, without reference to the period of their birth, thus including all parents and issue; and to one set she gives immediate freedom ; to the other and their after-born issue, freedom at eighteen. I think the general intent to fix the state and condition of all, is sufficiently apparent from the whole context of the will, and that the descriptive *301 terms used, when interpreted with reference to what precedes and follows, show that the testatrix intended to embrace all living at the termination of the particular estate, the increase as well as the mothers, in the two classes of negroes above and those under the age of fifteen.
I am for affirming the judgment.
The other judges concurred in the opinion of Allen, P.
Judgment affirmed.